**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **PCMG TRADING PARTNERS XXIII, LP,** | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **Cause No. _____** |
| | § | |
| **HIGHLAND CAPITAL MANAGEMENT, L.P.,** | § | |
| | § | |
| | § | |
| *Defendant*. | § | |

## ORIGINAL COMPLAINT

This matter concerns grave accounts of self-dealing and deception and seeks redress for violation of federal law including but not limited to violations of the Advisers Act of 1940, and other state causes of action.

### I.

### PARTIES

**1.**     Plaintiff, PCMG Trading Partners XXIII, LP ("PCMG"), is a limited partnership in the state of Delaware with its principal place of business in Dallas County, Texas.

**2.**     Defendant Highland Capital Management L.P. ("Highland" or "HCMLP") is a Delaware limited liability partnership, whose principal place of business is in Dallas, Texas.

### II.

### JURISDICTION AND VENUE

**3.**     Subject matter jurisdiction is proper in this court because there is a live case and controversy between the parties, this Court is a court of general jurisdiction over civil matters, and the amount dispute falls within the jurisdictional limits of this Court.

4.      This Court has general personal jurisdiction over Defendant Highland Capital Management, LP, because it has continuously done business in this state, and the causes of action arise from the acts or omissions committed in this state.

5.      Venue is proper in this Court because a substantial number of the acts or omissions giving rise to this lawsuit and the causes of action asserted herein occurred in Dallas County.

### III.

### FACTUAL BACKGROUND

6.      HCMLP is both the advisor and general partner of Highland Select Funds, LP ("Select").

7.      Plaintiff, PCMG, is an equity-holder in Select and for all relevant times, was an advisee of HCMLP, as a registered investment advisor (an "RIA"), subject to the Advisers Act of 1940 (the "Advisers Act").

8.      HCMLP therefore owed PCMG fiduciary duties. James Seery, as the agent of HCMLP and control person directing the actions of Select, acknowledged during testimony in April 2020, that he and HCMLP have fiduciary duties under the Advisers Act both to the funds that HCMLP manages and directly to the investors of those funds.

9.      He also testified that HCMLP is required to subordinate its interests in the funds to those of the investors.

10.      HCMLP's control over Select as an advisor and owner has also given it control over the assets that Select owns and controls.

11.      One of those assets is an entity called Trussway Manufacturing, Inc. ("Trussway"). Trussway specializes in manufacturing and designing trusses and other framing components for use on commercial and large-construction platforms.

12.     Trussway's wholly-owned subsidiary is an entity called Structural & Steel Products Inc. ("SSP").

13.     SSP, based in Ft. Worth, Texas, was a leading distributor and manufacturer of transportation, telecommunications, transmission and utility infrastructure products. SSP was founded in 1969 and manufactures steel products out of its Ft. Worth, TX manufacturing facility. Their manufactured parts and products are sold throughout the United States, from light rail infrastructure to high mast lighting poles to overhead highway sign structures.

14.     SSP was purchased in or around 2013 for $65 million – $20 million in equity, $33 million in bank debt, and $12 million in subordinated debt. Over the course of years, cash flows improved from $8 million at the time of acquisition, to over $10 million.

15.     In or around the first week of November, 2020, HCMLP caused Trussway to sell SSP to Race Rock Group, a Houston-based private equity group, which is reported to have a prior affiliation with the SSP management team.

16.     The sale was for approximately $50 million – which is a value far below what should have been, at what amounts to a distressed price given the original $60 million price (and the debt still remaining). By selling for $50 million, HCMLP wiped out $10 million in equity.

17.     Upon information and belief, the sale occurred without taking SSP to market through a normal competitive bidding process, without the benefit of a broker or investment banker, and without any "stalking horse" or shopping process.

18.     Other potential topping bids were specifically excluded by Seery from participating in the sale process.

19.     Specifically, Jim Seery (the CEO of Highland) explicitly forbade JP Sevilla (then the head of Private Equity)—as well as the entire team at HCMLP—from informing, engaging or

updating parties likely to pay a higher price, such as James Dondero and other parties. This directive was effective in that it completely chilled all bidding.

20.     There was no pro-investor rationale for such a directive which was unfair and detrimental to minority investors such as the Plaintiff.

21.     The driving reason for all of this clandestine selling is even more troubling: the sale appears to have been made in order for the cash receipts from the sale to be siphoned by HCMLP to pay its own creditors.

22.     Again, as Seery himself admitted under oath: as an RIA, neither he nor HCMLP is allowed to sacrifice the interests of its investors in order to save its own skin or to benefit itself; nor is Seery allowed to benefit a colleague or client at the expense of investors in a fund managed and advised by Highland.

23.     Furthermore, as an RIA, HCMLP's internal policies and procedures prevent it from advising an advisee fund and / or causing a trade to be made without full disclosure to the investors of the advisee fund of its interest in the transaction.

24.     There was no court approval for the sale, despite HCMLP being in bankruptcy.

25.     HCMLP has not filed any of the usual Rule 2015 reports for the operations and dispositions of its subsidiary businesses as required by law, announcing disclosing or reflecting this assets sale.

26.     HCMLP's compliance had an obligation to scrutinize the transaction. It, including Thomas Surgent, should have weighed in and compelled a more transparent process, should have scrutinized the relationship between SSP's then-CEO and the new buyers (who formerly employed him); and finally, HCMLP should have given the equity holders notice of the sale and/or offered SSP to PCMG or other equity holders as part of such a transparent process.

## IV.

## CAUSES OF ACTION

### First Cause of Action
### Breach of the Advisers Act

27.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

28.     As an RIA, HCMLP is subject to the Investment Advisers Act of 1940.

29.     Under this federal law, an investment adviser is a fiduciary.[1] This includes a duty of care and a duty of loyalty, and a duty to refrain from engaging in transactions in which it is not a disinterested person.

30.     The duty of loyalty imposed by the Advisers Act to which advisers are subject is not specifically defined in the Advisers Act or in Commission rules, but reflects a Congressional recognition "of the delicate fiduciary nature of an investment advisory relationship" as well as a Congressional intent to "eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser—consciously or unconsciously—to render advice which was not disinterested."

31.     To meet its duty of loyalty, an adviser must make full and fair disclosure to its clients of all material facts relating to the advisory relationship, including disclosing transactions in which the advisor has an interest, and to disclose all pertinent facts of a transaction that could affect the client or the client's interest.[2] In order for disclosure to be full and fair, it should be

---

[1] *SEC v. Capital Gains Research Bureau, Inc*., 375 U.S. 180, 194 (1963). *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 471, n.11 (1977) (in discussing SEC v. Capital Gains, stating that the Supreme Court's reference to fraud in the "equitable" sense of the term was "premised on its recognition that Congress intended the Investment Advisers Act to establish federal fiduciary standards for investment advisers"); Investment Advisers Act Release No. 3060 (July 28, 2010) ("Under the Advisers Act, an adviser is a fiduciary whose duty is to serve the best interests of its clients, which includes an obligation not to subrogate clients' interests to its own").

[2] *SEC v. Capital Gains*, *supra* ("Failure to disclose material facts must be deemed fraud or deceit within its intended meaning"). Investment Advisers Act Release 3060 ("as a fiduciary, an adviser has an ongoing obligation to inform its clients of any material information that could affect the advisory relationship"); General Instruction 3 to Part 2 of

sufficiently specific so that a client is able to understand the material fact or conflict of interest and make an informed decision whether to provide consent.

32.     This fiduciary duty also requires an adviser "to adopt the principal's goals, objectives, or ends." This means the adviser must, at all times, serve the best interest of its client and not subordinate its client's interest to its own. In other words, the investment adviser cannot place its own interests ahead of the interests of its client and must at all times act for the interests of its investors.[3]

33.     The duty of care includes, among other things: (i) the duty to provide advice that is in the best interest of the client, (ii) the duty to seek best execution of a client's transactions where the adviser has the responsibility to select broker-dealers to execute client trades, and (iii) the duty to provide advice and monitoring over the course of the relationship.

34.     These fiduciary duties are unwaivable, and any agreement made in derogation of the obligations under the Advisers Act is void.

35.     Section 204 of the Advisers Act requires HCMLP to carry written policies and procures that must be followed in order to adhere to its federal obligations.

36.     Section 206 of the Advisers Act prohibits transactions by an advisor that were accomplished via a "deceit" on a client or prospective client, or by concealing the role and interest the advisor has in the transaction, or via engaging in a course of conduct that has a tendency to mislead a client or which is manipulative.

---

Form ADV ("Under federal and state law, you are a fiduciary and must make full disclosure to your clients of all material facts relating to the advisory relationship").

[3] Investment Advisers Act Release 3060 (adopting amendments to Form ADV and stating that "under the Advisers Act, an adviser is a fiduciary whose duty is to serve the best interests of its clients, which includes an obligation not to subrogate clients' interests to its own," citing Investment Advisers Act Release 2106, supra footnote 15). *SEC v. Tambone*, 550 F.3d 106, 146 (1st Cir. 2008) ("Section 206 imposes a fiduciary duty on investment advisers to act at all times in the best interest of the fund..."); *SEC v. Moran*, 944 F. Supp. 286, 297 (S.D.N.Y 1996) ("Investment advisers are entrusted with the responsibility and duty to act in the best interest of their clients.").

37.     The Advisers Act also requires transparency.

38.     Here, HCMLP breached its duties under the Advisers Act by (1) selling SSP at a distressed price when it was not in distress and there was no need at SSP, Trussway or Select to sell SSP; (2) concealing the information about the transaction from PCMG, (3) failing to advice PCMG of the opportunity to purchase SSP, (4) concealing the purpose behind the sale of SSP and the conflicts of interest that arose; (5) causing SSP to be sold in a manner that violated the rights of PCMG as an investor (e.g., by failing to conduct an auction and obtaining competitive bids and taking SSP to market); (6) utilizing the sale for its own ends.

39.     The Advisors Act declares any contract that was made in violation of its provisions or regulations, or any contract that has been performed in violation of the Advisors Act, void.

40.     The Advisers Act created a private right of action to void unlawful agreements and acts and seek such equitable relief as accompanies such claims. Moreover, the Advisers Act creates a federally prescribed fiduciary duty picked up by state common law fiduciary duty claims and makes it impossible for those duties to be waived via contract or otherwise.

41.     PCMG has been damaged by HCMLP and is agents' breaches of fiduciary duty.

42.     PCMG is thus entitled to compensation for its losses and any other relief to which it is justly entitled.

## Second Cause of Action
## Breach of Fiduciary Duty under Texas Law

43.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

44.     HCMLP owes fiduciary duties to Plaintiff by virtue of its role as a direct RIA advisor to PCMG under an advisory contract.

45.     HCMLP owes fiduciary duties to Plaintiff by virtue of its role as a direct RIA advisor to Select, under an advisory contract, of which PCMG is an investor.

46.     Both of these duties require HCMLP to take any action that is in the best interest of the investors it is advising, whether directly or indirectly.

47.     HCMLP's decision to cause Trussway to sell SSP violated those fiduciary duties because they were not in the best interests of PCMG.

48.     HCMLP's decision to cause Trussway to sell SSP was a violation of its fiduciary duties to PCMG because it did not follow a valid process for maximizing the value of SSP.

49.     HCMLP's fiduciary duties further obligated it to fully and faithfully disclose all aspects of transactions with its investors-advisees, especially where HCMLP had a conflict of interest in the transaction.

50.     HCMLP has breached its fiduciary duties to PCMG.

51.     HCMLP, as an advisor to PCMG, should have informed PCMG that SSP was for sale at an advantageous price due to HCMLP's need to liquidate and raise capital for itself, and allowed PCMG the opportunity to purchase SSP at the distressed price that it went out at.

52.     HCMLP's internal policies and procedures specifically address and prohibit HCMLP's conduct, rendering the conduct reckless in the face of known risks.

53.     Because of HCMLP's breaches, PCMG has suffered losses in value and opportunity cost.

54.     Because of HCMLP's breaches, PCMG is entitled to recover damages, exemplary damages, attorneys' fees, and costs.

**Third Cause of Action**
**Breach of Contract**

55.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

56.     HCMLP owes duties to Plaintiff by virtue of its role as a direct RIA advisor to PCMG under an advisory contract.

---

Original Complaint

57.     Under the advisory agreement, HCMLP agreed to provide advice and investment opportunities to PCMG. The Select fund opportunity was invested in by PCMG specifically because it was advised to do so by HCMLP.

58.     HCMLP knew of an investment opportunity in SSP—which HCMLP had already advised on—and did not offer it to any other investor in select, such as PCMG, or to any third party who could have paid a higher price for SSP. Instead, SSP went to a private equity fund who saw the tremendous "upside" in the value of their new asset.

59.     This was a breach of the advisory agreement, as were the breaches of fiduciary duty, noted *supra*.

60.     Because of HCMLP's breaches, PCMG has suffered losses in value and opportunity cost.

61.     Because of HCMLP's breaches, PCMG is entitled to recover damages, exemplary damages, attorneys' fees, and costs.

Dated:  May 21, 2021                               Respectfully submitted,

                                                   **SBAITI & COMPANY PLLC**

                                                   */s/ Mazin A. Sbaiti*
                                                   **Mazin A. Sbaiti**
                                                     Texas Bar No. 24058096
                                                   **Jonathan Bridges**
                                                     Texas Bar No. 24028835
                                                   **Kevin N. Colquitt**
                                                     Texas Bar No. 24072047
                                                   J.P. MORGAN CHASE TOWER
                                                   2200 Ross Avenue – Suite 4900W
                                                   Dallas, TX  75201
                                                   T:  (214) 432-2899
                                                   F:  (214) 853-4367
                                                   E:  mas@sbaitilaw.com
                                                       jeb@sbaitilaw.com
                                                       knc@sbaitilaw.com

                                                   ***COUNSEL  FOR  PLAINTIFF***